## S98A0066. WALB-TV, INC. v. GIBSON et al.
### (501 SE2d 821)

HINES, Justice.

This is an appeal from a television station's request for electronic media access to court proceedings. Karen Michelle Eckman and William Jack Lematty are charged with murdering two victims. The State is not seeking the death penalty against Eckman, but is against Lematty. The defendants are to be tried separately, Eckman first.[1] WALB-TV filed a request to install audio and video recording equipment in the courtroom for both trials, with a videotape camera on a tripod and microphones at the witness stand and counsel tables, intending to record trial proceedings and then broadcast excerpts from the recordings during scheduled news reports. The State responded that the testimony at the two trials would be substantially the same, that broadcast of testimony in the first trial would corrupt the potential jury pool for the second trial, that due process rights of both defendants would be violated by the "heightened notoriety attendant on broadcast testimony," and that microphones placed at counsel tables would capture privileged conversations. After a hearing at which WALB-TV expressed a willingness to forego placing microphones at the counsel tables, the court denied the request and WALB-TV appeals.[2]

1. OCGA § 15-1-10.1 sets forth standards courts are to consider in determining whether to grant requests to televise, videotape, or film judicial proceedings. These factors include the consent of the parties, the impact on the administration of the court, the impact on due process, and whether the access would "detract from the ends of justice." The court conducted a hearing on WALB-TV's request at which these factors were addressed. In denying the request, the court cited the negative impact on the due process rights of the defendants and the potential distraction posed by the video camera. The court did not exclude all media representatives from the proceedings, only

---

[1] Inquiry with the clerk of the trial court reveals that Eckman has already been tried. However, we will consider the appeal as it relates to Eckman's trial because the underlying issue is capable of repetition yet evading review. See *Multimedia WMAZ v. State*, 256 Ga. 698, 700 (2) (353 SE2d 173) (1987).

[2] WALB-TV asserts appeal is properly in this Court by virtue of USCR 21.5, which states: "Upon notice to all parties of record and after hearing, an order limiting access [to court records] may be reviewed and amended by the court entering such order or by the Supreme Court at any time on its own motion or upon the motion of any person for good cause." We need not determine whether USCR 21.5 applies only to access of the court's physical files or how it relates to the statement of this Court's jurisdiction in Ga. Const. of 1983, Art. VI, Sec. VI, Pars. II & III. See USCR 1. The order at issue was entered in the context of a murder prosecution and the court below ruled that the defendants' constitutional rights would be affected by the requested access. Thus, this appeal is properly before this Court pursuant to Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (8).

the requested video and audio recording equipment. No other press access to court proceedings was affected.

Contrary to WALB-TV's contention, the court's decision is not governed by the principle that a movant for complete closure of the proceedings must demonstrate by "clear and convincing proof" that closure is necessary to prevent a "clear and present danger" to the right to a fair trial, or other such right. See *Ga. Television Co. v. State*, 257 Ga. 764, 765 (2) (363 SE2d 528) (1988). Compare *R. W. Page Corp. v. Lumpkin*, 249 Ga. 576, 579 (4) (292 SE2d 815) (1982). Rather, whether electronic media coverage will be allowed in the courtroom is a question for the trial court's discretion. OCGA § 15-1-10.1 (e); *Ga. Television Co.*, supra; *Multimedia WMAZ v. State*, 256 Ga. 698, 700 (2) (353 SE2d 173) (1987).

WALB-TV argues that, under this Court's decision in *Multimedia*, electronic media may be excluded only when the court makes certain specific findings, and that this order does not include such findings. However, *Multimedia* was decided before the 1996 passage of OCGA § 15-1-10.1, when a court's consideration of a request for electronic media coverage was governed solely by a previous version of USCR 22. Under USCR 22, such coverage would be allowed *unless* the court made specific findings that the coverage would either not be within the requirements of due process or would detract from the dignity and decorum of the court. OCGA § 15-1-10.1 now sets forth factors to be considered other than those grounded in USCR 22 as cited in *Multimedia*. USCR 22 was amended to include section (P), which states that "[a] request for installation and use of electronic recording, transmission, videotaping or motion picture or still photography of any judicial proceeding shall be evaluated pursuant to the standards set forth in OCGA § 15-1-10.1." This amendment was effective May 15, 1997; WALB-TV's request was filed July 18, 1997. Therefore WALB-TV's request is governed by the new version of USCR 22 and the standards set forth in OCGA § 15-1-10.1, rather than only those standards present in USCR 22 when *Multimedia* was decided.

Nor is it the case that the court failed to make specific findings. It expressly found that the proposed camera coverage would jeopardize the defendants' due process rights. During the hearing, the court inquired about the amount of coverage the court proceedings might receive in the area, and stated that the court was concerned about the impact of the proposed coverage on the jurors in the Lematty trial if the requested coverage was permitted for the Eckman trial. These findings were sufficient to support the denial of coverage in the Eckman trial. See *Ga. Television Co.*, supra at 765 (1). Such a ruling is within the court's discretion under the circumstances here, in which testimony at one trial will be similar to that introduced at a

later trial, and could create a tainted jury pool for the second trial.

2. The same cannot be said, however, for the exclusion of the requested coverage from Lematty's trial. The court stated two reasons for denying the request; due process concerns and the distraction posed by the camera's presence. The court's findings do not provide any basis for finding that Lematty's due process rights would be jeopardized by the proposed coverage during his own trial, nor is one apparent from the record. During coverage of testimony in Lematty's trial, his jury would already be seated and the concern produced by televising testimony in Eckman's earlier trial would not exist. Although there may be some circumstances in which a defendant's due process rights would be jeopardized by televising testimony at his trial, there was no factual basis in the record for finding that Lematty's rights would be so jeopardized if a video camera were present during his trial.

Nor is there any factual basis for the court's denying the Lematty coverage because the camera could pose a distraction to those participating in the proceedings. While the dignity and administration of the court are certainly proper considerations when evaluating a request for coverage, as OCGA § 15-1-10.1 recognizes, the only evidence presented on the issue of distraction was that the camera would be stationary and silent.[3] Thus, it must be concluded that the court abused its discretion in excluding the camera as a potential distraction. Accordingly, the court's ruling that the proposed coverage be excluded from the Eckman trial is affirmed, but the ruling excluding the proposed coverage from the Lematty trial is reversed.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Sears, Hunstein, Carley and Thompson, JJ., who concur in part and dissent in part.*

HUNSTEIN, Justice, concurring in judgment only in part and dissenting in part.

In this case the trial court denied WALB-TV's request for electronic-media coverage of the Eckman and Lematty trials without making any specific findings of fact[4] and based solely on a mere pos-

---

[3] Although testimony showed that the tape in the camera would need to be changed periodically, this was stated to be a quick and quiet procedure. Further, the court was clear that its concern was not that the changing of the tape would be a distraction, but that the camera's mere *presence* would be a distraction.

[4] The trial court's order consists solely of the statement that it was denying the request for electronic-media coverage

on the grounds that electronic coverage of the trials in this case could have an adverse [e]ffect upon the ability of Defendants to receive a fair trial in violation of their rights of due process and that the presence of a camera in the courtroom would be a distraction.

sibility that the defendants' due process rights *could* be infringed. The failure to make specific findings of fact is violative of Uniform Superior Court Rule 22 and this Court's decision in *Multimedia WMAZ v. State*, 256 Ga. 698, 699 (353 SE2d 173) (1987), which continue to require trial courts to make specific factual findings that electronic-media coverage is either not "within the requirements of due process of law" or cannot be "done without detracting from the dignity and decorum of the court" before denying a request for electronic-media coverage. In addition, the trial court's denial of coverage of these trials, based on a mere possibility of an infringement of defendants' due process rights, is violative of the "open courthouse door" policy in Georgia. See *R.W. Page Corp. v. Lumpkin*, 249 Ga. 576, fn. 1 (292 SE2d 815) (1982). Accordingly, I respectfully dissent to the majority's affirmance of the trial court's order denying electronic-media coverage of the Eckman trial and concur in judgment only with the majority's reversal of the trial court's order denying electronic-media coverage of the Lematty trial.

The requirement that trial courts make specific factual findings was not altered by the passage of OCGA § 15-1-10.1 or the subsequent addition of subsection (P) to Uniform Superior Court Rule 22 directing courts to evaluate a request for electronic-media coverage pursuant to the standards set forth in OCGA § 15-1-10.1. The provisions of OCGA § 15-1-10.1 do not address or contradict the longstanding requirement that trial courts make specific findings and such findings continue to be necessary to enable appellate courts to determine that the trial court properly weighed the conflicting constitutional concerns and had sufficient evidence before the court to justify an infringement on First Amendment rights.

Moreover, OCGA § 15-1-10.1 cannot be constitutionally interpreted to effectuate a reduction in the public's First Amendment rights by changing the standard to be applied by trial courts when weighing those First Amendment concerns against the due process concerns that arise when there are requests for electronic-media coverage of a criminal trial. The law is clear that the public's First Amendment rights are paramount and the burden is on the party seeking to exclude coverage to establish evidence of the prejudicial effect of such coverage on a defendant's due process rights or to show that coverage will detract from the dignity and decorum of the courtroom. See *Multimedia*, supra. Speculation by either the parties or the trial court cannot justify the infringement of First Amendment rights caused by the exclusion of electronic-media from the courtroom. Where, as here, the trial court based its order denying electronic-media coverage on mere speculation that electronic-media coverage might have an adverse effect on the defendants' right to a fair trial, that burden has not been met.

Therefore, because I would reverse the trial court as to both the Eckman and Lematty trials based on the trial court's failure to make the specific factual findings required by USCR 22 and *Multimedia,* I concur in judgment only as to that part of the majority opinion reversing the trial court's order excluding electronic-media coverage from the Lematty trial and dissent to the affirmance of the trial court's ruling as to the Eckman trial.

I am authorized to state that Justice Sears joins in this dissent.

CARLEY, Justice, concurring in part and dissenting in part.

In my opinion, this case evidences no reversible abuse of that discretion which a trial court is authorized to exercise in determining whether to allow the electronic media in the courtroom during a trial. Therefore, I concur fully in the majority's affirmance of the denial of WALB-TV's request for such access to the trial of Karen Eckman, but respectfully dissent to the majority's reversal of the denial of the request as to the trial of William Lematty.

As the majority correctly notes, there is a significant difference between a complete exclusion of the media from a courtroom, and a mere limitation on the extent to which the media is allowed access to cover an on-going judicial proceeding. A total bar of the media must pass the stringent test of *R.W. Page Corp. v. Lumpkin,* 249 Ga. 576 (292 SE2d 815) (1982). Whether only the electronic media should be barred from a judicial proceeding is, on the other hand, a matter for the trial court's discretionary consideration under Uniform Superior Court Rule (USCR) 22. *Ga. Television Co. v. State,* 257 Ga. 764, 765 (2) (363 SE2d 528) (1988). USCR 22 specifically recognizes, as a general proposition, the inherently "distractive nature of electronic or photographic equipment," and, for this reason, imposes certain "restrictions and conditions" on the use of such equipment. Among those enumerated "restrictions and conditions" is subsection (P) of USCR 22, which provides that a request for the use of such equipment in a judicial proceeding "shall be evaluated pursuant to the standards set forth in OCGA § 15-1-10.1." That incorporated statute sets forth a number of factors which relate to the impact that access to the courtroom by the electronic media will have "on the public interest and the rights of the parties in open judicial proceedings, the impact upon the integrity and dignity of the court, and whether the proposed activity would contribute to the enhancement of or detract from the ends of justice." OCGA § 15-1-10.1 (a). Thus, Rule 22 mandates that the trial court make its own independent discretionary determination as to the incorporated factors enumerated in OCGA § 15-1-10.1 (b).

There is no contention that the trial court in this case did not exercise its discretion under Rule 22. Compare *Multimedia WMAZ v.*

*State*, 256 Ga. 698 (353 SE2d 173) (1987). One of the reasons set forth for denying access to the electronic media is that the presence of a camera in the courtroom would be a distraction. See OCGA § 15-1-10.1 (b) (5), (7). The majority concludes that there is no evidentiary support for this finding, because the camera would be stationary and silent. However, nothing is cited to support the conclusion that it is an abuse of the trial court's discretion to find that such a camera still constitutes a distraction. In my opinion, a trial court is in the best position to determine whether a camera, even one which does not move or make a sound, will be distracting for the jurors, witnesses, parties and counsel in a given proceeding, since a trial court is familiar with the notoriety of the cases which are on its calendar, the citizens in its community, and the configuration of its courtroom. Here, the trial court expressed its belief that "if there is a camera in the courtroom somebody's going to have their mind on the camera when it ought to be somewhere else." I find nothing in the record to show that, under the circumstances of this case, the trial court abused its discretion by so finding. Moreover, as the majority notes, there is evidence that the tape in the camera would need to be changed periodically. The majority discounts this as support for the trial court's finding, however, because the procedure would be "quick and quiet." I submit that, simply because the majority makes its own subjective determination that the tape-changing procedure would not be distractive, it does not follow that the trial court abused its discretion by making a contrary finding. What is a rapid and soundless procedure to an appellate court considering a cold record may, in the considered and informed opinion of a trial court, constitute a significant distraction in its courtroom as it attempts to preside over a capital criminal case. The majority further concludes that the fact that there will be a tape-changing procedure does not support excluding the electronic media, because the trial court was concerned only with the "presence" of the camera in the courtroom. However, it is only because the camera is present in the courtroom that performance of the tape-changing procedure during the on-going trial would become necessary. Therefore, I do not infer from the trial court's general objection to the distractive nature of the camera that it could not have been persuaded to deny access due to the distraction of the tape-changing procedure.

In my opinion, the majority merely substitutes its own finding that the electronic media should be allowed access to Lematty's trial for the trial court's discretionary finding to the contrary. I submit that a trial court does not abuse its discretion simply because it exercises that discretion differently than would an appellate court. If there was a reversible abuse of discretion in this case, then, in my opinion, no trial court is authorized to exercise any discretion in its

implementation of USCR 22. Therefore, I respectfully dissent to the majority's reversal of the trial court's order barring the electronic media from Lematty's trial.

I am authorized to state that Justice Thompson joins in this opinion.

DECIDED JULY 6, 1998.

*Cannon & Meyer von Bremen, William E. Cannon, Jr.,* for appellant.

*John R. Parks, District Attorney, Cecilia M. Cooper, John V. Harper, Donald L. Lamberth,* for appellees.

*Powell, Goldstein, Frazer & Murphy, James C. Rawls,* amicus curiae.